UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ECETRA N. AMES | * | CIVIL ACTION NO. 09-7058 |
|       Plaintiff, | * | |
| | * | |
| VERSUS | * | SECTION "C " |
| | * | |
| JOHN B. OHLE, III; BANK ONE | * | |
| CORPORATION, n/k/a | * | MAGISTRATE DIVISION (3) |
| J. P. MORGAN CHASE & CO.; | * | |
| DOUGLAS STEGER; | * | |
| KENNETH A. BROWN; AND | * | |
| DENISE E. DAVILA BROWN, | * | |
|       Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTIONS TO DISMISS ON BEHALF OF DEFENDANTS BANK ONE, KENNETH AND DENISE BROWN, AND DOUGLAS STEGER

The plaintiff, Ecetra Ames, opposes the motions to dismiss filed by defendants Bank One Corporation n/k/a J.P. Morgan Chase & Company ("Bank One"), Doc. No. 75, Kenneth A. Brown and Denise E. Davila Brown, Doc. No. 74, and Douglas Steger, Doc. No. 79 (collectively, "the defendants"). In substantial part, the Browns and Mr. Steger move to dismiss based on the same analysis put forward by Bank One. Bank One, however, and therefore all of the defendants, disingenuously omits critical allegations in Mrs. Ames' First Amended and Supplemental Complaint for Damages, Doc. No. 70 ("Amended Complaint"), and Amended RICO Statement, Doc. No. 91.

In doing so, the defendants' 12(b)(6) arguments are fatally defective under the appropriate standard to be applied by this Court to motions to dismiss on the pleadings.

## I.  Introduction

On July 6, 2010, Mrs. Ames filed her 42-page Amended Complaint, detailing her causes of action in 149 paragraphs of allegations, specifically concerning the fraudulent schemes pivoting on the conduct of John B. Ohle III.[1] Doc. No. 70. Mrs. Ames followed her Amended Complaint with an Amended RICO Statement on August 6, 2010. Doc. No. 91.[2] These allegations put the defendants on notice, with the requisite particularity where required, that (1) Mrs. Ames alleged that each of the defendants was involved in a RICO association-in-fact to target high net-worth individuals and business entities; (2) that the scheme of this enterprise was to fraudulently induce its targeted victims to participate in certain investment vehicles and tax strategies to secure exorbitant fees, generate kickbacks among the members of the enterprise, and invest in continuing facets of the scheme to generated further income for the enterprise; (3) that Mr. Ohle's conduct was central to the enterprise and the scheme, as he orchestrated the members of the enterprise to engage in roles necessary to the scheme; (4) that Mr. Ohle's conduct was known and approved by his employer at the relevant times, Bank One; (5) that Bank One benefitted substantially from the misconduct of its employee, Mr. Ohle; (6) that the Browns and Mr. Steger took actions as members of the enterprise to further the scheme of extracting fees from the victims and generate kickbacks among the enterprise's members; and (7) that the damages alleged by Mrs. Ames were deliberately concealed from her at the time of

---

[1]     Mr. Ohle is a defendant, as well, but has not sought to dismiss Mrs. Ames' Complaint on the same basis as Bank One, the Browns, and Mr. Steger. He is currently defaulted, Doc. No. 37, though his motion to set aside the default and dismiss for failure to timely serve is pending. *See* Doc. Nos. 44, 72, 83.

[2]     "[W]hen considering a Rule 12(b)(6) motion, courts routinely consider the RICO case statement alongside the complaint." *Conwill v. Greenberg Traurig*, 2009 WL 5178310, *2 n.16 (E.D. La. Dec. 22, 2009) (Africk, J.).

a 2003 settlement agreement between Mr. Ohle and Mrs. Ames. Only by turning a deliberately blind

eye to the allegations of Mrs. Ames' Amended Complaint and Amended RICO Statement are the

defendants able to advance an argument that Mrs. Ames has failed to state a claim for relief.

## II.    Background

### A.    Mrs. Ames' Amended Complaint and Amended RICO Statement

The allegations in Mrs. Ames' Amended Complaint and Amended RICO Statement are

extensive and detailed; while the entirety of those pleadings must be looked to in evaluating the

motions to dismiss, Mrs. Ames highlights the following allegations conspicuous in their absence

from the defendants' recitation of the allegations or, at best, given short shrift by the defendants.

Regarding Bank One's employment of Mr. Ohle and the link between Mr. Ohle's conduct

and the culpability of Bank One, Mrs. Ames alleged as follows:

- • "During certain times relevant to this proceeding, specifically from 1999 through 2002, Ohle was employed by defendant Bank One in the bank's Innovative Strategies Group." Amended Complaint ¶ 14. Although Mrs. Ames alleges that she first engaged Mr. Ohle in 1998, none of the allegations of wrongdoing in the Amended Complaint refer to any conduct prior to Mr. Ohle's employment at Bank One. Showing no distinction between the work of Bank One and the activities alleged to be engaged in by the RICO enterprise, Mrs. Ames alleged further that the Innovative Strategies Group "assisted high net-worth individuals and others with wealth management strategies including … investment vehicles and tax strategies that were designed to offset or limit an individual's tax liabilities." *Id*.

- • "Bank One was aware of and expressly approved Ohle's role as trustee for the Ames Trust." Amended Complaint ¶ 17; *see also* Amended RICO Statement, at p. 3 ("[Bank One] employed defendant John Ohle and was aware of and approved his actions with regard to the purported management of Plaintiff's funds.").

- • Alleging specific conduct by Mr. Ohle was taken in his role as a Bank One employee, Mrs. Ames alleged, "In the latter part of 2000, while employed by Bank One, Ohle recommended to [Mrs. Ames], as part of his undertaking to provide financial planning advice and to present sophisticated tax strategies, that [Mrs. Ames] contribute another 38,000 shares of Proctor & Gamble company stock … to the Trust[.]"Amended Complaint ¶ 18. Specifically, the written instructions to

accomplish the transfer "were drafted by Ohle and then faxed by Ohle to [Mrs. Ames] on Bank One letterhead from Ohle's Bank One office in Chicago." *Id*.

- Certain kickbacks derived from funds that were deducted from Mrs. Ames' "Carpe Diem" investment "fund[ed] Kenneth Brown's position as the third-party investor in the [HOMER] tax strategy, a certain tax strategy sold by Ohle and Bank One to wealthy individuals." Amended Complaint ¶ 33. "Defendants Ohle, Kenneth Brown, Denise Davila Brown and Bank One received significant income from their roles with regard to the HOMER tax strategy. Bank One received referral fees for referring its clients to the HOMER strategy[.]" *Id*. ¶ 34; Amended RICO Statement, at p. 17. "In particular, defendant Bank One also participated in and benefitted from the HOMER transactions specifically and the actions of John Ohle, its employee, generally. The actions of [the] Enterprise generated 'extraordinary fee income' in the amount of $5.2 million for Bank One." Amended RICO Statement, at pp. 17-18; *see also* Amended RICO Statement, at p. 3. Only through the actions of the enterprise in diverting money from Mrs. Ames were the HOMER transactions marketed by Ohle and Bank One made possible. Amended Complaint ¶¶ 35, 37, 70.

Accordingly, Mrs. Ames made specific allegations that Mr. Ohle's conduct was known and approved by Bank One, that his conduct was within the scope of the business conducted by Bank One and specifically within the scope of the duties performed by Mr. Ohle for Bank One, that he used Bank One letterhead and his Bank One office in engaging in the conduct, and that Bank One benefitted substantially from his conduct. Critically, Mrs. Ames also made specific allegations regarding the scope of the conduct she complains of that was outside the information she had at the time of the 2003 settlement agreement, and which is also the nucleus of the conduct by which Bank One received such substantial benefit. While Bank One makes great show of comparing certain recitals from the 2003 settlement agreement and certain allegations in ten paragraphs or subparagraphs of the 149-paragraph Amended Complaint, Bank One glosses over the fundamental portion of that set of allegations that set forth what Mrs. Ames did ***not*** know at the time of the 2003 settlement agreement, information that was concealed from her by Mr. Ohle:

42.   The amount transferred from [Mrs. Ames'] personal accounts to the Trust's account totals $11,989,538.00. Ultimately, however, due to the actions of the

Enterprise, more than $5,000,000.00 of the Trust's assets were misappropriated or squandered.

43.   During the year 2000, while acting as Trustee of the Trust and employed by defendant Bank One, Ohle caused over $600,000.00 to be transferred from the Trust to bank accounts either owned or controlled by Ohle and/or his family members, which was used to fund the Enterprise.

44.   During the year 2001, while acting as Trustee of the Trust and employed by defendant Bank One, Ohle caused over $620,000.00 to be transferred from the Trust to bank accounts either owned or controlled by Ohle and/or his family members, which was used to fund the Enterprise.

…

48.   Ohle did not send statements to [Mrs. Ames] covering the assets, liabilities, receipts and distributions from the Trust, and provided no accounting of his administration of the Trust until an account was requested on behalf of [Mrs. Ames] in March 2003. ***Even after the accounting was provided to [Mrs. Ames] by Ohle, the transfers made by Ohle as detailed in Paragraphs 42-44 herein were not disclosed nor the fact that those monies were used to fund the Enterprise.*** Ohle also did not disclose that he and the Enterprise were the beneficiaries of the majority of the $350,000.00 fee improperly withheld from [Mrs. Ames'] Carpe Diem investments ***nor that he had taken $347,834.00 from the Trust to fund the Enterprise's HOMER investments***.

49.   In or about August 2003, Ohle and [Mrs. Ames] executed a Settlement Agreement regarding some of Ohle's actions as set forth herein. At that time, [Mrs. Ames] was falsely told that the $350,000.00 of fees were paid entirely to Steger. She was never apprised of the $347,834.00 taken from the Trust and funneled to the Enterprise through Carpe Diem; nor of the amounts withdrawn by Ohle from the Trust in 2000, 2001 and 2002 as outlined in Paragraphs 42-44 herein; nor of the use of the Carpe Diem fees and the Trust funds as a scheme to fund the HOMER tax strategy which benefitted defendants Bank One, Kenneth Brown, Denise Davila Brown and Ohle. These schemes were partially brought to light in the context of the [2008 and 2009 original and superseding] Indictments [of Mr. Ohle], but were not fully known until Ohle's criminal trial. Plaintiff did not know, and could not have reasonably learned, of the full extent of Defendants' conduct and her injuries from that conduct until June 2010.

Amended Complaint ¶¶ 42-49 (emphasis added). Therefore, not only did Mr. Ohle conceal the transactions from Mrs. Ames that are at the heart of the allegations, but Mrs. Ames alleges that those

concealed transactions were the key to the enterprise's ability to expand the scheme into the HOMER transactions that were so profitable to all of the defendants. *See also* Amended Complaint ¶ 64(f) ("Ohle did not advise [Mrs. Ames] that $347,834.00 was taken from the Trust, sent to Carpe Diem and then funneled back to Ohle, the Browns and the Enterprise in order to fund the Enterprise's investment in the HOMER tax strategy."); ¶ 64(g) ("Defendants Bank One, Ohle and Steger pursued other wealthy individuals to participate in the HOMER tax strategy, a strategy that they knew or should have known would be found abusive and/or illegal by the IRS.").

In the Amended RICO Statement, Mrs. Ames emphasized the misrepresentations by Mr. Ohle leading up to the 2003 settlement agreement:

> Neither was the fact that Plaintiff's misappropriated money was used to fund the Enterprise disclosed to Plaintiff until the criminal trial of Ohle. Ohle told Plaintiff's representatives that the withdrawals from the CRUT were put in to so-called "fixed rate" and "adjustable rate" investment vehicles, which was wholly false. Ohle also did not disclose that he and the Enterprise were the beneficiaries of the majority of the $350,000.00 fee improperly withheld from Plaintiff's Carpe Diem Fund investments nor that he had taken $347,834.00 from the Trust to fund the Enterprise's HOMER investments. In fact, Ohle specifically told Plaintiff's husband that he **did not** receive any of the amounts taken from the Carpe Diem Fund investments – again utterly false. … In or about August 2003, based upon gross misrepresentations made by Ohle, Plaintiff agreed to a Settlement Agreement with Ohle regarding some of his actions related to the CRUT. At that time, Plaintiff was falsely told that the $350,000.00 of fees were paid entirely to Steger. She was never apprised of the $347,834.00 taken from the Trust and funneled to the Enterprise through the Carpe Diem Fund; nor of the amounts withdrawn from the Trust in 2000, 2001 and 2002 …; nor of the use of the Carpe Diem Fund fees and the Trust funds as a scheme to fund the Enterprise which benefitted defendants Bank One, Kenneth Brown, Denise Davila Brown, Douglas Steger and Ohle[.]

Amended RICO Statement, at pp. 19-20.

Although the tag-along motions to dismiss on behalf of the Browns and Mr. Steger offer only conclusory statements that the Amended Complaint does not make specific allegations with regard to their role in the RICO enterprise, the Amended Complaint and the Amended RICO Statement are

replete with allegations specific to those defendants' roles. *See, e.g.*, Amended Complaint ¶¶ 20, 26, 30, 32, 33, 34, 35, 36, 38, 49, 64(e), 64(f), 64(g); Amended RICO Statement, at pp. 2, 4-6, 13-17, 20, 24. Neither the Browns nor Mr. Steger attempt in their motions to dismiss to argue how these specific allegations relating to them are insufficient to allege their role in the RICO enterprise, scheme, or pattern of racketeering activity.

### B.   Ohle Criminal Proceedings

As noted in the Amended Complaint and Amended RICO Statement, Mr. Ohle was indicted in November 2008 for his fraudulent activities in inducing victims to participate in tax strategies and investment vehicles, and for his own tax fraud, with a superseding indictment filed on April 1, 2010; after a three-week trial, Mr. Ohle was convicted on June 2, 2010. *U.S. v. Ohle*, No. 08-Crim.-1109 (S.D.N.Y.). In the indictments, and to a large degree in the testimony and evidence at the criminal trial, Mrs. Ames for the first time became aware of the conduct and the roles of the participants in the RICO scheme that she has now alleged. She also became aware through the Ohle criminal proceedings that Mr. Ohle omitted and misrepresented key facts leading up to the execution of the 2003 settlement agreement. During the Ohle criminal trial testimony, Mrs. Ames became aware that the money siphoned from her accounts was used by the defendants to fund the HOMER scheme and generate enormous revenues for the participants, including specifically Bank One.

For example, in testimony from Mr. John Wogan, Mrs. Ames' attorney preceding and during the confection of the 2003 settlement agreement, Mr. Wogan testified that, though he requested that Mr. Ohle provide him with all documents related to investments in the trust as a final accounting prior to the settlement agreement, Mr. Ohle omitted mention or documentation of numerous withdrawals and transfers, and that he did not know of those transactions until the Ohle criminal

proceedings.[3] Mr. Wogan also testified to the fact that Mr. Ohle never provided Mrs. Ames with information regarding the $347,834.00 that ultimately became the seed money for the HOMER scheme.[4] Mr. Wogan also testified regarding the false information provided by Mr. Ohle as to the disposition of the $350,000 fee deducted from the Carpe Diem transaction.[5]

Further, Mr. Brown's testimony at the Ohle criminal trial provided Mrs. Ames her first knowledge that Bank One, under the name "American National Bank & Trust Company of Chicago," was a signatory on many of the HOMER transaction documents, and knew that Mr. Brown was the designated third party on those transactions.[6] Prior to this, Mrs. Ames did not know of Bank One's role in the wider scheme to use funds misappropriated from her to fund another facet of the scheme of the RICO enterprise – the HOMER scheme. The Amended Complaint and the Amended RICO Statement rely extensively throughout their allegations on information learned from the indictments and the testimony and evidence in the Ohle criminal proceedings, information that was not known at the time of the 2003 settlement agreement, and could not have been learned prior to at least November 2008 – and much of it not until May and June 2010.

## III.   Argument

### A.   Standard for Review under Federal Rule of Civil Procedure 12(b)(6)

In reviewing the defendants' arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6), this Court will "accept as true the well-pleaded factual allegations in the complaint. The

---

[3]     Transcript of John Wogan testimony, *U.S. v. Ohle*, No. 08-Crim.-1109 (S.D.N.Y) ("Wogan Testimony"), May 18, 2010, at pp. 879-888 (Exh. A hereto).

[4]     Wogan testimony, May 17, 2010, at pp. 832-35 (Exh. A hereto).

[5]     Wogan testimony, May 17, 2010, at pp. 786-797 (Exh. A hereto).

[6]     Transcript of Kenneth Brown testimony, *U.S. v. Ohle*, No. 08-Crim.-1109 (S.D.N.Y.), May 14, 2010, at pp. 608-612 (Exh. B hereto).

complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (internal citations omitted). In order to grant the dismissal, this Court must find "beyond doubt that [Mrs. Ames] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Id*. (internal quotation marks and citations omitted); *see also 5-Star Premium Finance, Inc. v. Wood*, 2000 WL 533941 (E.D. La. May 2, 2000) (Berrigan, J.) (holding, specifically as to a RICO claim, that "[a] 12(b)(6) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief."). This Court may consider the Amended Complaint, as well as documents referred to in Mrs. Ames' Amended Complaint that "are central to her claim." *Id.* In addition, the Court may consider Mrs. Ames' Amended RICO Statement. *See Conwill*, 2010 WL 5178310 at *2 n.16.

###    B.    The Amended Complaint Alleges a Basis for Bank One's Liability

A prime example of Bank One's overly restrictive and selective reading of Mrs. Ames' Amended Complaint is Bank One's argument that Mrs. Ames has failed to allege a respondeat superior theory because the Amended Complaint does not contain the phrase that Mr. Ohle was "acting within the course and scope of his employment,"[7] and that Mrs. Ames' claims involving Bank One at most amount to a negligent supervision claim not properly pled as a stand-alone claim.

Bank One's argument turns federal pleadings requirements inside-out, placing a premium on a talismanic, conclusory allegation at the expense of pleading the actual substantive elements that would properly state a claim. *Cf. Otto v. Sterling Electronics Corp.*, 1973 WL 176, *2 (S.D. Tex. May 25, 1973) (finding that failure to invoke the term "intentional" for Title VI "intentional

---

[7]        Memorandum in Support of Bank One Corporation's Motion to Dismiss the Amended Complaint, Doc. No. 75-1 ("the Bank One Motion"), at 8.

discrimination" claim was not fatal defect, "especially when considered in light of the federal practice to allow amendment of the pleadings to conform to the proof."). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In determining whether a complaint should survive a 12(b)(6) motion to dismiss, the Court should look to the actual factual content of the allegations, rather than to whether particular labels have been asserted: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As the defendants themselves urge, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Mrs. Ames has not incanted a conclusory allegation that Mr. Ohle was working within the "course and scope of his employment" at Bank One, but has pled specific factual content to meet the elements for respondeat superior liability under RICO. Respondeat superior liability is available under RICO where it is shown that the employer entity "derived benefit from its representative's wrongful acts." *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 425 (5th Cir. 1990); *see also Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) ("[W]e find no barrier to vicarious liability in this case as such liability has been found to be available under subsections (a) and (b) when the principal has derived some benefit from the agent's wrongful acts."); *Crowe v. Smith*, 848 F. Supp. 1258, 1263 (W.D. La. 1994) ("[A]n organization, which is not an alleged RICO enterprise, that derives benefit from its representative's wrongful acts may be held vicariously liable for such acts under § 1962(c)."). This comports with the general respondeat superior liability applied in Louisiana. *See, e.g.*, *Johnson v. First Nat. Bank of Shreveport*, 2000-870 (La. App. 3d Cir. 6/20/2001), 792 So.

2d 33, 44-45 (quoting *Emert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990)) ("'The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.… [An] employer does not need to actually receive any benefit from the employee's act, but if the employer does derive any benefit from the activities of the employee, that is the decisive factor.").

Here, Mrs. Ames' Amended Complaint and Amended RICO Statement allege that Bank One derived significant benefit from the activities of the RICO scheme and specifically from the conduct of its employee, Mr. Ohle. Bank One received at least $5.2 million in referral fees from the HOMER transactions that were promoted by Mr. Ohle (and by Bank One) and that were only made possible due to the seed money siphoned by the enterprise from Mrs. Ames' funds. *See, e.g.*, Amended Complaint ¶¶ 33, 34, 35, 37, 70; Amended RICO Statement, at pp. 3, 17-18. Moreover, Mrs. Ames alleges that the scheme of Mr. Ohle and the enterprise matched with the scope of Bank One's business, Amended Complaint ¶ 14; that Bank One was aware of and approved Mr. Ohle's actions in administering Mrs. Ames' funds, Amended Complaint ¶ 17, Amended RICO Statement, at p. 3; and that Mr. Ohle used Bank One letterhead and facilities in fulfilling his role with regard to Mrs. Ames' funds, Amended Complaint ¶ 18. Particularly when viewed in a light most favorable to maintaining Mrs. Ames' claims, these allegations allege the specific factual content to support respondeat superior liability of Bank One for the actions of Mr. Ohle; a rote recitation of the words "course and scope of employment" would add nothing of legal significance, and those words' absence likewise is not a fatal defect requiring dismissal of Mrs. Ames' complaint as to Bank One.

### C.    The Complaint Satisfies Rule 9(b)

Despite the many specific allegations in Mrs. Ames' Amended Complaint and Amended RICO Statement, the defendants next persist in raising an argument that Mrs. Ames' fraud

allegations are not sufficiently pled with particularity. Bank One's argument under Federal Rule of Civil Procedure 9(b) essentially repackages its Rule 8 argument, urging that "the complaint here does not contain even a conclusory allegation that Ohle acted within the course of his employment at Bank One when he committed the alleged misconduct."[8] Of course, as discussed above the law does not require "conclusory allegation[s]," but the type of actual factual content to be alleged that Mrs. Ames has in fact included in her Amended Complaint and Amended RICO Statement.

The primary defect underlying so much of the defendants' motions to dismiss – failure to accord the well-pled allegations of the complaint appropriate deference – is prominently on display in Bank One's Rule 9(b) arguments. Not only does Bank One fail to accept Mrs. Ames' allegations as true and acknowledge that reasonable inferences must be drawn in her favor, but Bank One flatly ignores allegations in Mrs. Ames' Ameded Complaint that directly contradict Bank One's assertions. For example, Bank One asserts, "The complaint does not allege that Ohle's work on plaintiff's accounts was part of his responsibilities at Bank One, that Bank One earned any fees from that work, or that Bank One was aware of Ohle's puported fraud."[9] These assertions could only be true in the absence of Mrs. Ames' allegations at, for example paragraphs 14, 17, 18, 33, 34, 35, 37, and 70 of the Amended Complaint and at pages 3 and 17-18 of the Amended RICO Statement.

This defect in the defendants' arguments – applying an impermissibly selective reading of Mrs. Ames' Amended Complaint and Amended RICO Statement – also infects the only actual Rule 9(b) argument in Bank One's discussion of Rule 9(b), where Bank One argues that "[m]uch of the

---

[8]      Bank One Motion, at 11-12.

[9]      Bank One Motion, at 12.

complaint alleges fraud by 'the Defendants' and 'the Enterprise.'"[10] Without restating the entirety of Mrs. Ames' Amended Complaint and Amended RICO Statement here, those pleadings are distinct from the type of "general allegations" found objectionable in the cases relied on by the defendants. Mrs. Ames' pleadings allege a specific roadmap of how each of the participants participated in and benefitted from the fraudulent activities of the enterprise. A RICO violation inherently involves elements of the enterprise acting in a unified manner to accomplish the goals of the scheme of the enterprise, such that allegations focusing on these common activities and common purpose will of necessity appear in the complaint. In her Amended Complaint, however, Mrs. Ames does not provide rote and generalized recitals of the RICO elements to apply generically across all defendants.

The conclusion urged by the defendants could only be reached by ignoring the allegations at paragraphs 14-50, the heart of the Amended Complaint. These paragraphs put forth the who, when, where, and how of particular actions taken by each of the defendants and their co-conspirators, including dates, places, wire transfers, particular representations made, amounts, percentage interests, account numbers, and the exact mechanics of how the defendants' schemes operated. As discussed above, Bank One also ignores the allegations of the Amended Complaint and the Amended

---

[10]     Bank One Motion, at 10. Even without confronting the particularized allegations that *are* contained in Mrs. Ames' pleadings, the defendants' argument ignores that Rule 9(b)'s requirements are less stringent where the fraud alleged involves the fraud of third parties:

> [T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all the facts necessary to detail his claim, and that is most likely to occur when the plaintiff alleges fraud against one or more third parties ... This is appropriate as it is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him ... But, the plaintiff is expected to identify the particular defendants who allegedly dealt with him, and ... describe the circumstances under which the particular defendants dealt directly with him.

*Interlease Investors Aviation II, LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 914 (N.D. Ill. 2003) (internal citations and quotation marks omitted).

RICO Statement that specifically allege the basis for Bank One's respondeat superior-based liability for Mr. Ohle's particular actions. Instead, Bank One disingenuously focuses on the specific cause-of-action allegations set forth within Mrs. Ames' claims for RICO (¶¶ 55-63, 65-92), Declaratory Judgment and Unjust Enrichment (¶¶ 93-99), Breach of Fiduciary Duty (¶¶ 102-105), Fraud & Detrimental Reliance (¶¶106-114), Negligent Misrepresentation (¶¶ 127-134), Breach of Contract (¶¶ 135-140), and Civil Conspiracy (¶¶ 141-149). What Bank One ignores is that, in each of these statements of the particular causes of action, rather than restating the specific allegations already laid out in paragraphs 14-50 – which are completely neglected by the defendants in their arguments – Mrs. Ames expressly incorporates those allegations into each cause of action. *See* Amended Complaint ¶¶51, 93, 100, 106, 115, 135, 141. Specifically as to the RICO claim, the defendants also conspicuously omit from their listing of "general allegations" Mrs. Ames' paragraph 64, which in eleven sub-paragraphs over five pages adds specific allegations regarding the RICO scheme and each defendant's particular role to those specific allegations already set forth in paragraphs 14-50 of the Amended Complaint. Additional particularized allegations are left out of the defendants' listing that are contained within Mrs. Ames' negligent misrepresentation claim at paragraphs 115-126. Mrs. Ames' Amended RICO Statement is likewise detailed with particular allegations as to each defendant's role in the misconduct perpetrated against Mrs. Ames.

What becomes quickly apparent when the defendants' Rule 9(b) argument is parsed against the allegations in Mrs. Ames' Amended Complaint and Amended RICO Statement, is that the defendants are applying a Rule 12(b)(6) and Rule 8 and 9 standard that allows them to simply ignore those portions of the plaintiff's pleadings that are inconvenient or detrimental to their arguments for

dismissal.[11] Indeed, even the Rule 9(b) case relied on by the defendants does not support dismissal in cases where there truly are only "general allegations" pled, but allows for an opportunity to amend to amend and allege the requisite sufficient facts. *See S.W. La. Healthcare Sys. v. MBIA Ins. Corp.*, 2006 WL 1228903, * 4 (W.D. La. May 4, 2006).

### D.    Mrs. Ames' Claims Are Not Time-Barred

The defendants' arguments that Mrs. Ames' RICO and state law claims are time-barred relies on a reading of the Amended Complaint and Amended RICO Statement that omits the allegations regarding the information that was ***not*** in the accounting provided by Mr. Ohle prior to the 2003 settlement agreement. Even though the Amended Complaint expressly and specifically alleges that the damages sought now could not have been subject to the 2003 settlement agreement because the particular actions giving rise to Mrs. Ames' current claims were concealed from her at the time of the agreement and/or not subject to that agreement, the defendants nevertheless seek to take advantage of the dishonesty of Mr. Ohle in confecting that agreement.

---

[11]    Bank One concedes that there are allegations focusing on the particular defendants by name, showing Mr. Ohle's prominent and particular role and how the other defendants "acted under Ohle's direction." Bank One Motion, at 10. Mr. Steger adds no analysis to this issue in his motion, but simply adopts and incorporated Bank One's arguments on the issue, thereby also conceding that Mrs. Ames has made specific allegations as to his conduct at the direction of Mr. Ohle. Defendant Douglas Steger's Motion to Dismiss the Amended Complaint, Doc. No. 79, at 1. The Browns add little to this argument, arguing without basis that "the complaint fails to allege any nexus between the Browns and plaintiff" and that "there is no allegation that the Browns knew anything about plaintiff and her dealings with Ohle[.]" Memorandum in Support of Kenneth and Denise Brown's Motion to Dismiss the Amended Complaint, Doc. No. 74-1, at 2. The Browns cite no authority for why such an assertion – even if it were supported by the allegations in Mrs. Ames' pleadings, which it is not – would be fatal to the RICO claims against them. *See Ducote Jax Holdings, L.L.C. v. Bradley*, 2007 WL 2008505, *4-5 (E.D. La. July 5, 2007) (finding William Bradley liable for RICO violations for conspiracy with John Ohle (defendant there and here) for injuries to the plaintiff even where Mr. Bradley had never spoken to the plaintiffs and had no file containing information regarding the plaintiffs).

### 1.    Mrs. Ames' RICO Claims Are Not Time-Barred

It is long settled that federal courts should not apply state limitations or repose periods (here, of course, prescriptive or peremptive periods) to RICO claims, particularly where the state period in question is less than the four-year statute of limitations that is otherwise applicable:

> In our view the practicalities of RICO litigation present equally compelling reasons for federal pre-emption of otherwise available state statutes of limitations even under Justice Scalia's approach. … The multistate nature of RICO indicates the desirability of a uniform federal statute of limitations. With the possibility of multiple state limitations, the use of state statutes would present the danger of forum shopping and, at the very least, would 'virtually guarante[e] ... complex and expensive litigation over what should be a straightforward matter.' ABA Report 392. Moreover, application of a uniform federal limitations period avoids the possibility of the application of unduly short state statutes of limitations that would thwart the legislative purpose of creating an effective remedy.

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 153-54 (1987). Under the "injury discovery rule," the four-year RICO limitations period is not triggered until, at the earliest, a "plaintiff knew or should have known of his injury." *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 773 (5th Cir. 2000). The time period will not run during the period of time in which the defendants have fraudulently concealed the injury from the plaintiff. *See Prieto v. John Hancock Mut. Life Ins. Co.*, 132, F. Supp. 2d 506, 519 (N.D. Tex. 2001) ("The equitable tolling or fraudulent concealment doctrine, under which the statute does not run until a plaintiff knows, or through the exercise of reasonable diligence would have known, of the injury, is not available for Rule 10b-5 claims. The doctrine is, however, available for civil RICO claims.").

As discussed above, Mrs. Ames became aware of certain issues with Mr. Ohle's administration of her funds, and engaged in due diligence, retaining Mr. John Wogan as her attorney to investigate and seek an accounting from Mr. Ohle: In the face of these efforts, however, Mr. Ohle concealed information from Mrs. Ames and Mr. Wogan, which only came to the attention of Mrs.

Ames during the Ohle criminal trial.[12] While the resulting 2003 settlement agreement applied to the conduct revealed in the accounting, it could not have applied to evidence knowledge of – or release claims regarding – the fraudulent conduct and the extensive enterprise and scheme engaged in by the defendants here, which was not revealed to Mrs. Ames prior to the Ohle criminal trial. The information necessary to trigger an inquiry by Mrs. Ames into that conduct was concealed from her due diligence efforts by Mr. Ohle. *See* La. C.C. art. 3076 ("A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."); *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/1994), 630 So. 2d 741, 753 ("Even when valid, releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."); *see also Burge v. N.W. Natl. Ins. Co.*, 2008-1396 (La. App. 4th Cir. 6/30/2009), 14 So. 3d 616, 621-22.  Mrs. Ames' Amended Complaint specifically alleges injuries that were not disclosed in the accounting and the 2003 settlement agreement. Amended Complaint ¶¶ 42-49. She did not know and could not have learned of this concealed conduct and injury until the Ohle criminal proceedings commenced with Ohle's indictment in November 2008, eleven months before she filed her Complaint in this action. Amended Complaint ¶¶ 24, 49. The simple fact remains that Mrs. Ames is not pursuing any claims for the amounts that Mr. Ohle disclosed in the 2003 accounting and that serves as the basis for the 2003 settlement agreement. The injuries she

---

[12]    Wogan Testimony, May 17, 2010, at pp. 786-797, 812-19, 832-837; Wogan Testimony, May 18, 2010, at pp. 879-890.

seeks to remedy are based on the amounts that were diverted from her accounts and that Ohle concealed from the 2003 accounting, as detailed in the Amended Complaint ¶¶ 42-49.[13]

The primary cases cited by the defendants require no different result. For example, in *Senigaur v. Ford Motor Co.*, 222 F. Supp. 2d 829 (E.D. Tex. 2002), the court observed that whether reasonable diligence was exercised to discover fraud in the confection of a settlement agreement is typically a fact question, and only dismissed the RICO and other claims there because the plaintiffs and their attorneys admitted that they knew of the fraud at the time of the prior settlement agreement. *Id*. at 832. Here, Mr. Wogan's testimony at Mr. Ohle's trial shows that Ms. Ames' allegations in her Amended Complaint are correct, that she did ***not*** know of the conduct and injuries at the heart of her RICO claim – particularly that certain amounts were diverted from her Carpe Diem funds and used to generate kickbacks among the members of the enterprise and to invest into the inception of the HOMER transactions that in turn further enriched the members of the enterprise. Finally, in *Astoria Entertainment, Inc. v. Edwards*, 159 F. Supp. 2d 303 (E.D. La. 2001), the court's holding that a RICO plaintiff should not "[w]ait[] for the Government to initiate prosecution and essentially us[e] the indictment to establish RICO standing" was made in the face of a finding that the plaintiffs knew of their precise RICO injuries more than four years before the lawsuit was brought. Here, Mrs. Ames did not have this same level of knowledge until the Ohle criminal proceedings commenced.

---

[13]    These sections of Mrs. Ames' Amended Complaint Allege the fact of misappropriations that Mr. Ohle concealed from her in confecting the 2003 settlement agreement, in addition to the use of those misappropriated funds, which is an important issue for purposes of liability under RICO. They also detail that Mr. Ohle concealed that the $350,000 "fee" was actually misappropriated to benefit Mr. Ohle himself and the other members of the enterprise, and that an additional $347,834 was taken and used to seed the HOMER facet of the enterprise's scheme. *E.g.*, Amended Complaint ¶ 48. Bank One posits that an account summary attached to a September 2003 letter from Ohle's counsel to Mr. Wogan provided notice of potential fraud, but ignores Mr. Wogan's testimony at Mr. Ohle's criminal trial regarding the lack of any information he received from Mr. Ohle to document the transactions on the summary. Wogan Testimony, May 17, 2010, at pp. 832-35. At the very least, Bank One's Exhibit C presents a fact issue in contradiction to Mr. Wogan's testimony, but cannot serve as the basis for a Rule 12(b)(6) dismissal.

## 2.    Mrs. Ames' State Law Claims Are Not Time-Barred

The defendants argue incorrectly that the two- or three-year peremptive periods at La. R.S. § 9:2234(A) apply to Mrs. Ames' state law claims. Louisiana courts have not broadly applied the peremptive bars of 9:2234, and the only case to examine the statute's applicability in the face of claims of fraud has held unequivocally that such claims will be subject instead to the prescriptive period at Louisiana Civil Code article 3492. *See Southern v. Bank One*, 740 So. 2d 775, 779 (La. App. 2d Cir. 1999) ("The trial court found that the prescriptive period for torts applied to this case[.] … We find no error in the trial court's analysis. In their original petition, the plaintiffs contended that the defendants caused damage through fraud and wrongful conduct. These allegations are generally thought of as sounding in tort. The prescriptive period for a tort, one year, is set forth in La. C.C. art. 3492[.]"). In a footnote, Bank One attempts to distinguish *Southern* on the basis that in that case not all of the funds were in trusts and that there were multiple plaintiffs, not all of whom were beneficiaries.[14] These were not factors in the *Southern* court's prescription analysis, however; instead, it looked solely to the fact that the original allegations were that the injuries were caused by fraud and wrongful conduct. On this issue, *Southern* is indistinguishable from Mrs. Ames' claims. Therefore, the prescriptive period for torts should apply to Mrs. Ames state law claims, rather than the peremptive period for certain claims against trustees under 9:2234.

Under the one-year prescriptive period, courts will apply *contra non valentem* principles that operate essentially as the fraudulent concealment and injury discovery rules do with regard to Mrs. Ames' RICO claims. *See Plaquemines Par. Com'n Council v. Delta Development Co.*, 502 So. 2d 1034, 1054-56 (La. 1987) (describing the genesis and scope of *contra non valentem* in Louisiana

---

[14]    Bank One Motion, at 14 n.3.

-19-

law). For the same reasons discussed above, Mrs. Ames did not know or have reason to know about her state law causes of action arising from the transactions concealed by Mr. Ohle in the 2003 accounting until, at the earliest, the commencement of the Ohle criminal proceedings by his initial indictment in November 2008, which did not contain the level of details and the explicit links to the misconduct aimed at Mrs. Ames that were fleshed out in the May-June 2010 criminal trial of Mr. Ohle. Where the Complaint in this matter was filed on October 28, 2009, her claims are timely.

### E.   Mrs. Ames' RICO Claims Are Not Otherwise Barred

#### 1.   PSLRA Bar Does Not Apply

The defendants' PSLRA argument relies on a grossly overbroad reading of the PSLRA bar to RICO claims. The plain language of section 107 of the PSLRA precludes alleging as a RICO predicate act "any conduct that would have been ***actionable as fraud in the purchase or sale of securities***." 18 U.S.C. § 1964(c) (emphasis added). Here, Mrs. Ames has not alleged fraud in the securities transactions themselves, but in the distinct activities of Mr. Ohle and his co-conspirators in misappropriating funds from her Carpe Diem accounts and from her trust, then using the funds to generate kickbacks and seed the HOMER facet of their scheme. The fraud alleged by Mrs. Ames does not "coincide" with any securities transactions in the manner discussed in *SEC v. Zandford*, 535 U.S. 813, 822 (2002).

That the trust was funded at least in part with the sale of stock does not render the misappropriation of funds from the trust actionable as securities fraud. There has been no allegation that the securities transaction involved in establishing the trust is itself actionable as fraud (securities fraud or otherwise). "The proper inquiry … is not whether the wrongful conduct is 'connected to and dependent upon securities fraud,' but whether the conduct is 'actionable as securities fraud.'" *Tittle v. Enron Corp.*, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (citing *Bald Eagle Area Sch. Dist. v.*

*Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999)). In the line of cases applying the PSLRA bar under the standard of whether the alleged fraud was "in connection with" a securities transaction, the alleged fraud could not have occurred without engaging specifically in the underlying securities transaction. *See, e.g.*, *RA Investments I, LLC v. Deutsche Bank AG*, 2005 WL 1356446, * 10 (N.D. Tex. June 6, 2005) (finding the securities transactions "integrally related" to the alleged fraud); *King v. Deutsche Bank AG*, 2005 WL 611954, *20 (D. Or. Mar. 8, 2005); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 372 (S.D.N.Y. 2004); *Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1177 (M.D. Fla. 2004) (finding alleged misconduct "coincide[d] ***directly***" with securities transactions) (emphasis added); *Loftin v. KPMG LLP*, 2003 WL 22225621, *6 (S.D. Fla. 2003). Here, the trusts could have been funded with any type of capital without affecting the parameters of the fraudulent conduct engaged in by the defendants. That the initial funding of the trusts happened to be with stocks or the proceeds of stock sales does not render those securities transactions sufficiently "in connection with," "integrally related" to, or "directly" coincident with the fraud alleged in Mrs. Ames' claims. Where they are merely "incidental to" the fraudulent conduct alleged in the Amended Complaint, then the PSLRA bar will not apply. *See Kottler v. Deutsche Bank*, 607 F. Supp. 2d 447, 457 n.9 (S.D.N.Y. 2009).

## 2.      Amended Complaint Alleges a "Pattern" of Racketeering Activity

Reading Mrs. Ames' allegations and all reasonable inferences therefrom in a light most favorable to her, it is impossible to conclude, as defendants have, that Mrs. Ames' Amended Complaint and Amended RICO Statement do not allege a pattern of racketeering activity. Mrs. Ames' allegations meet the requirements to show either open-ended or a closed-ended continuity.

Ms. Ames has alleged predicate acts occurring as to her at least from 1999 through 2002, a four-year period, as conceded by the defendants.[15] This Court has found in a prior case that allegations of closed-ended continuity are sufficient to survive a motion to dismiss where the RICO plaintiff alleges acts occurring over less than one year where they "threatened to continue indefinitely into the future but for being curtailed by disclosure." *5-Star Premium Fin., Inc. v. Wood*, 2000 WL 533941, *4 (E.D. La. May 2, 2000) (Berrigan, J.). Therefore, certainly the extensively detailed predicate acts pled by Ms. Ames to have occurred over a four-year period would meet this standard.

Moreover, Mrs. Ames' allegations should be found sufficient to state an open-ended continuity, as she plainly has not limited her allegations to a single victim or a single scheme, but in her Amended Complaint has alleged that the money misappropriated from her by the enterprise was used to fund another facet of their scheme, the HOMER transactions, which targeted many more victims. *E.g.*, Amended Complaint ¶¶ 33, 37, 49, 64(f), 64(g). Bank One argues that the order of the court in Mr. Ohle's criminal trial to sever the count of the indictment involving the misappropriation of Ms. Ames' funds from the counts involving the selling of the HOMER transactions shows that the HOMER transactions may not be used in establishing a pattern of racketeering activity. The court's decision in Mr. Ohle's criminal proceedings, however, was premised strictly on the language in Mr. Ohle's indictment, and the court admitted that, had the indictment not been so restrictively phrased, it would have been persuaded by the government's argument that a significant component of the HOMER scheme required Mr. Ohle's recruitment and funding of Mr. Brown to act in a third-party role to make the HOMER scheme work, and that such funding was accomplished through fraudulent generation of client fees. *U.S. v. Ohle*, 678 F. Supp. 2d 215, 224-25 (S.D.N.Y. 2010).

---

[15]    "In this case, the alleged misconduct underlying the complaint apparently took place from late 1999 through mid 2002." Bank One Motion, at 15 (citing Amended Complaint ¶¶ 16-41).

Indeed, following this ruling by the Ohle criminal court, the government issued a superseding indictment that detailed the connection between the activities alleged by Mrs. Ames here and the genesis and conduct of the HOMER facet of the scheme.[16]

### 3.   Mrs. Ames Has Alleged a Violation of 18 U.S.C. § 1962(a)

Section 1962(a), "'boiled down to [its] essence in plain English,' provides that 'a person who has received income from a pattern of racketeering cannot invest that income in an enterprise." *Succession of Wardlaw v. Whitney Nat'l Bank*, 1994 WL 577442 (E.D. La. 1994) (quoting *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993)). As detailed above, the allegations in the Amended Complaint and the Amended RICO Statement extensively allege how Mr. Ohle, the Browns, and Mr. Steger used the funds obtained through their fraudulent activities involving Mrs. Ames to generate kickbacks to each other and to other participants, and to establish the HOMER facet of the scheme, which benefitted them and benefitted Bank One. As discussed above, Bank One may be liable under section 1962(a) vicariously for the acts of its employee, Mr. Ohle, where it benefitted from his misconduct. *See Crowe*, 848 F. Supp. At 1263.

### F.   Mrs. Ames Has Alleged Claims for Breach of Fiduciary Duty, Negligent Misrepresentation, and Breach of Contract

Bank One's arguments that Mrs. Ames has not stated claims for breach of fiduciary duty, negligent misrepresentation, and breach of contract are all premised on La. R.S. § 6:1124, which requires that there be a written agency or trust agreement before there can be a finding of the existence of a fiduciary duty. Ultimately, however, Bank One's arguments based on 6:1124 are a repackaging of its respondeat superior arguments, as Bank One's liability can still be based on the liability of Mr. Ohle, with whom Bank One concedes Mrs. Ames did have a written trust agreement.

---

[16]    *U.S. v. Ohle*, 08-Crim.-1109 (S.D.N.Y. April 1, 2010) (Doc. No. 66) (Exh. C hereto).

*See* La. R.S. § 6:1124 (referring to the fiduciary duty of a "financial institution *or officer or employee thereof* ") (emphasis added). As discussed above, Mrs. Ames has adequately alleged the factual content necessary to pursue claims against Bank One based on a respondeat superior theory.

### G. In the Absence of Other Remedy, Mrs. Ames Has Alleged a Claim for Unjust Enrichment

The defendants' first argument regarding why Mrs. Ames has failed to state a claim for unjust enrichment is that the Amended Complaint "does not plausibly allege either that Bank One was 'enriched' or that there is a 'connection' between any enrichment and plaintiff's purported impoverishment."[17] This again fails to read the allegations of the Amended Complaint through the proper 12(b)(6) lens. Mrs. Ames has alleged that Bank One earned $5.2 million in fees from the HOMER transactions, and that those transactions were only made possible because the seed-funds were the money that the enterprise defrauded from Mrs. Ames. While the members of the enterprise were able to take the amount of money misappropriated from Mrs. Ames and enrich themselves to a far greater amount, the connection alleged by Mrs. Ames is neither "inconsequential" nor "speculative."[18] The defendants should not be insulated from liability merely because they were so successful in managing their schemes.

The defendants' second argument regarding unjust enrichment is that it is only available in the absence of another available remedy at law. Indeed, after spending the prior 23 pages of their brief arguing that Mrs. Ames has no cause of action supported by her allegations, the defendants contradictorily concede the "existence" of Mrs. Ames' six other claims. If the defendants are correct,

---

[17]     Bank One Motion, at 24.

[18]     In fact, Civil Code article 2298 contemplates that damages may be due on a claim for unjust enrichment where the amount of impoverishment and the amount of enrichment are not the same. La. C.C. art. 2298 ("The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.").

as Mrs. Ames believes they are, that she has stated causes of action in her other six claims, then the defendants are also correct that unjust enrichment is unavailable. However, if this Court were to find that Mrs. Ames does not have another cause of action available to her, then she has properly pled the unjust enrichment cause of action in the alternative, "to fill a gap in the law where no express remedy is provided." *Coastal Environmental Specialists, Inc. v. Chem-Lig Intern., Inc.*, 2000-CA-1936 (La. App. 1st Cir. 11/9/2001), 818 So. 2d 12, 19.

**H.    Mrs. Ames' Civil Conspiracy Claim is Based On Independent Tort of Fraud**

The defendants assert that Mrs. Ames has failed to allege an independent underlying tort for her state law civil conspiracy claim. Mrs. Ames alleged fraud within her civil conspiracy cause of action. Amended Complaint ¶ 142. In addition, she alleged that the previously alleged acts stated in the complaint were the unlawful acts underlying the conspiracy, *id.* ¶ 144, and among the previously alleged acts thus incorporated into the civil conspiracy claim was Mrs. Ames' Fourth Cause of Action, for fraud. Amended Complaint ¶¶ 106-114.

**IV.    Conclusion**

For these reasons, Mrs. Ames requests that this Court deny the motions to dismiss filed by defendants Bank One, the Browns, and Mr. Steger.

Respectfully submitted,

*/s/ H.S. Bartlett III*
**GLADSTONE N. JONES (#22221), T.A.**
**LYNN E. SWANSON (#22650)**
**H.S. BARTLETT III (#26795)**
**CATHERINE E. LASKY (#28650)**
**JONES, SWANSON, HUDDELL &**
**GARRISON, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
**Counsel for Ecetra N. Ames**

-25-

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing has been served upon all counsel of record, by filing

through this Court's electronic filing and notification system, this the 24th day of August, 2010.

/s/ H.S. Bartlett III
**H.S. BARTLETT III**